FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

01 FEB -6 PM 1: 47

DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| LEANNA PERRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CV-00-PT-3121-M |
| | ) | |
| VICKI GRANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ENTERED

FEB 6 2001

### MEMORANDUM OPINION

This cause comes to be heard upon defendants Vicki Grant ("Grant") and Randall

Johnson's ("Johnson") Motion to Dismiss or in the Alternative, Motion for More Definite

Statement, filed on December 13, 2000.  The plaintiffs have brought this action against the

defendants in their individual capacities pursuant to 42 U.S.C. §§ 1983 and 1985, as well as

various state causes of action.  In their motion, the defendants petition the court to dismiss all

claims against them for failure to state a claim upon which relief may be granted or,

alternatively, to order the plaintiffs to make a more definite statement of the claims against them

pursuant to the Eleventh Circuit's heightened pleading requirements in suits against officials in

their individual capacities.

### STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule

12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true.

United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All

factual allegations are to be construed in the light most favorable to the plaintiff. <u>Brower v. County of Inyo</u>, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. <u>*In re* Johannessen</u>, 76 F.3d 347, 349 (11th Cir. 1996).

**FACTS ALLEGED IN THE COMPLAINT**

The plaintiffs allege that on January 6, 2000, they were working as volunteers at a bingo game hosted by the Coosa Valley Elks Club. During the Bingo game, the Etowah County Sheriff's department, including Sheriff's Deputies Grant and Johnson, conducted a raid of the establishment, acting upon information provided by defendant Johnson. Despite numerous protests that they were mere unpaid volunteers, the defendants arrested the plaintiffs for "Promoting Gambling." Defendant Grant responded to these declarations of innocence by stating that "you can't just volunteer for anything you want." The plaintiffs were not the only volunteers that night; three other volunteers, all African American, were also present, but were not arrested. All plaintiffs are Caucasian. Later, during a television interview, defendant Grant implied that the plaintiffs had committed the illegal acts of embezzlement and theft. When the defendants were tried, they were found to be not guilty.

**THE COUNTS IN THE COMPLAINT**

**Count I: False arrest/false imprisonment**

The plaintiffs claim that the defendants caused them to be falsely arrested and falsely imprisoned on charges that were later found to be insupportable. The plaintiffs claim that the defendants knew of their innocence when they made the arrest, but that they proceeded in spite of this knowledge because of "bias." Although the plaintiffs do not specify the nature of the

2

bias, it can be inferred from their statement of facts that they believe the bias to be racial in nature.

**Count II: Violation of the First Amendment**

The plaintiffs claim that, by arresting them with the knowledge that they were innocent and by telling them that they did not have the right to volunteer wherever they wanted to volunteer, they somehow violated the plaintiffs' First Amendment rights.

**Count III: Malicious Prosecution**

The plaintiffs claim that by causing them to be arrested, incarcerated, and prosecuted for an offense of which they knew the plaintiffs to be innocent, and for which the plaintiffs were indeed pronounced "not guilty," the defendants maliciously prosecuted the plaintiffs.

**Count IV: Defamation of Character**

The plaintiffs claim that defendant Grant's media statement was false and misleading, and was designed to defame their characters. The plaintiffs allege that, as a result of defendant Grant's statements, they suffered pain, lost wages, fees, and mental anguish.

**Count V: Violation of Equal Protection**

The plaintiffs claim that by arresting only the Caucasian volunteers and not the African American volunteers, the defendants violated the plaintiffs' Fourteenth Amendment rights of Equal Protection under the law.

**FACTS NOT PLED IN THE COMPLAINT**

Plaintiff Leanna Perry ("Perry") managed a facility that housed the Agricola Bingo Parlor, which is used by various charitable organizations to sponsor bingo games. According to the Alabama Bingo Statute, attached to the plaintiffs' response at Exhibit B, bingo parlors must be licensed to operate, and charitable organizations must have permits to sponsor games. The

3

people responsible for the actual performance of the game must be volunteers– they cannot be compensated.

The plaintiffs' names are listed clearly as volunteers on the Coosa Valley Elks Club volunteer list, which had been given to the Etowah County Sheriff's Department prior to this incident.  Plaintiff's Exhibit C.  The volunteer sheet acknowledges that the volunteers have received no compensation for their participation in the bingo games.  The three African American volunteers signed the sheet as well.  According to the plaintiffs, both the volunteer lists and the bingo permit applications were submitted directly to defendant Grant.

When defendants Grant and Johnson initiated the raid, defendant Grant initially claimed that the Elks Club had begun the game too early and that they had exceeded their allotted game time of two and a half hours.  Then she arrested the plaintiffs for "Promoting Gambling," an offense that punishes knowingly profiting from an unlawful promotion of gambling activity.  The arrest warrant stated that the plaintiffs had promoted gambling without a permit.  Although the members of the Elks club and the other volunteers continuously informed the defendants that the plaintiffs were volunteers and had not received compensation for their participation, defendant Grant completed the arrest.

ARGUMENT

The court will address the arguments regarding each count separately.

**Violation of the First Amendment**

The defendants argue that the plaintiffs have failed to state a claim under the First Amendment.  In the alternative, they argue that they are entitled to qualified immunity because the plaintiffs cannot produce clearly established law with a factual context sufficiently similar to the facts alleged.  The plaintiffs respond that the right that they believe the defendants infringed

4

upon was their right to peaceful assembly.  They acknowledge that the Alabama legislature has

not passed a law abridging their right to assemble, but argue that the defendants' actions under

the "color of state law," violated that right.  They also erroneously argue that the defendants are

not entitled to qualified immunity because the laws of the State of Alabama remove qualified

immunity from a state agent who acts in bad faith.[1]  The defendants respond by maintaining that

there are no set of facts pled in the complaint that could amount to a First Amendment claim.[2]

As a second alternative, the defendants request that the court order the plaintiffs to plead their

First Amendment claim more specifically, in accordance with the Eleventh Circuit's heightened

pleading requirements for § 1983 suits against state officials in their individual capacities.  See

GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

**Violation of the Equal Protection Clause**

The defendants again argue that, even assuming that the facts in the plaintiffs' complaint

are true, the plaintiffs nevertheless have failed to state an equal protection claim.  In the

alternative, they assert qualified immunity with respect to the equal protection claim because the

plaintiffs cannot produce clearly established equal protection case law in the Eleventh Circuit

with a factual context sufficiently similar to the instant case.  Again, the defendants request the

court to order the defendants to plead their equal protection claim more specifically.

The plaintiffs respond by emphasizing that they and the African American volunteers

---

[1]  Because the plaintiffs appear to have completely missed the concept that, in a federal proceeding, brought in a federal court pursuant to federal law, the federal principles of qualified immunity apply to the federal claims, the court will not address this argument further.  The court notes, however, that, in response to the defendants' challenge, the plaintiffs have produced no Eleventh Circuit case law that purports to clearly establish the right to peaceable assembly in this– or any– factual context.

[2]  The defendants include quotes from other federal cases that explain why a bingo game is not protected as free expression.  However, since the plaintiffs do not contend that the defendants violated their right to free expression, this argument is superfluous.

5

were performing the same activities and that they were arrested while the African American volunteers were not. They emphasize their claim that the defendants' behavior was wilful and a result of their "bias." They quote passages from sections 1983 and 1985(3) that refer to the liability arising from the deprivation of rights under color of law and the liability of two or more people who conspire to deprive a class of persons of their equal protection under the law. The plaintiffs argue that the equal protection violation extended not only to the discriminatory arrest, but also to the deprivation of their right to volunteer in bingo games under "the Bingo Statute." They contend that the defendants are not entitled to qualified immunity for the same erroneous reason referred to above.

The defendants reply that the plaintiffs have not pled enough facts that indicate that the were sufficiently similarly situated with those who were not arrested. To indicate that the story is not as simple as it seems, they refer to the sales of certain illegal "early bird" bingo cards, and note that the plaintiffs have not pled that the African American volunteers sold such cards, or that the plaintiffs themselves did not sell the cards. Without specific facts such as these, they assert, the complaint does not meet the heightened pleading requirement.

**The remaining state claims**

The defendants assert that, as state officials sued in their individual capacities for money damages, they are entitled to absolute sovereign immunity and to all other state law immunities. The plaintiffs argue that the defendants are not entitled to immunity, citing the Alabama Supreme Court's most recent decision in Cranman v. Maxwell, __ So. 2d __ 2000 WL 1728367 (Ala. November 22, 2000). In Cranman, the Alabama Supreme Court restated the rules for sovereign immunity, thereby limiting that immunity to State agents who did not act "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken

6

interpretation of the law." Id. at *11-12.  The plaintiffs argue that, because they have pled facts

in their complaint that accuse the defendants of acting wilfully, maliciously, and with bad faith,

sovereign immunity should not be granted at this time.  Instead, the plaintiffs argue that the

parties should be permitted to perform discovery to either prove or disprove the allegations of

maliciousness and bad faith.

The defendants argue that the plaintiff's interpretation of Cranman is incorrect.  They

contend that the most recent incarnation of the Cranman opinion preserves the rule of *Ex parte*

Purvis, 689 So. 2d 794, 795 (Ala. 1996), in which the Alabama Supreme Court held that a

deputy sheriff acting in the scope of his employment was immune from suit under the provisions

of Article 1, Section 14 of the Alabama Constitution.  The defendants maintain that Cranman

does not change the "traditional absolute sovereign immunity given sheriffs and deputies under

Alabama law," citing Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1996) and Parker v.

Amerson, 519 So. 2d 442 (Ala. 1987).

The gradual erosion of the doctrine of sovereign immunity for state officials has been

chronicled at length by the Alabama Supreme Court on several occasions.  The Cranman opinion

provides a thorough discussion of the ongoing saga; therefore this court will not reinvent the

wheel.  In a footnote to Cranman, the court states that: "We do not deal here with the absolute

immunity of witnesses, judges, prosecutors, and legislators, nor do we overrule *Ex parte* Purvis .

. . ." 2000 WL 1728367, * 23 n. 2.

In Purvis, the plaintiff sued both a sheriff and a sheriff's deputy for injuries that she had

received from a fugitive that they had failed to apprehend.  689 So. 2d at 795.  The court, finding

that the defendants had acted in the scope of their employment, concluded that they were

immune from suit pursuant to Article I, Section 14 of the Alabama Constitution.  Id. at 795.  The

7

court recognized the exception to Section 14 immunity for willful, malicious, or bad faith

conduct, articulated in Spring Hill Lighting & Supply Co. v. Square D Co., 662 So. 2d 1141,

1148 (Ala. 1995), but concluded that the exceptions to immunity did not apply to the defendants.

Id. "In the first place, Spring Hill Lighting did not deal with claims against a sheriff and a

deputy sheriff or other constitutional officer, but instead dealt with . . . state employees in the

State Docks Department. . . ." Id. at 795-796. Although the court acknowledged that the

plaintiff in Purvis had alleged that the defendants had intentionally failed to follow proper

procedure, it nonetheless found that they were entitled to immunity. Id.

     In reaching its decision, the Purvis court relied in large part upon Karrick v. Johnson, 659

So. 2d 77 (Ala. 1995). 689 So. 2d at 796. In Karrick, the Alabama Supreme Court granted

qualified immunity to a sheriff who had been sued for money damages for false imprisonment

and malicious prosecution. 659 So. 2d at 79. In its opinion, the Karrick court articulated the

limited exceptions to a sheriff's sovereign immunity. The court, quoting its prior opinion in

Alexander v. Hatfield, 652 So. 2d 1142, 1144 (Ala. 1994), stated that

> "Under Article I, § 14, of the Alabama Constitution of 1901, the only exceptions
> to the sovereign immunity of sheriffs are actions brought: (1) to compel him to
> perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin
> him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad
> faith, fraudulently, beyond his authority, or under mistaken interpretation of the
> law, or (5) to seek construction of a statute under the Declaratory Judgment Act . .
> . ."

Sheriff's deputies enjoy the same level of immunity that sheriffs possess. 659 So. 2d at 79

(internal quotations and citations omitted). The Alexander case itself is notable because it

involved a suit against a deputy sheriff in both her individual and official capacities for, among

other things, bad faith service of process. 652 So. 2d at 1142. Despite the allegations of bad

faith, the court, finding that the deputy had made the challenged actions while "on duty," upheld

8

the lower court's grant of summary judgment to the defendant based on Section 14 sovereign immunity. Id. at 1144.

The message of the preceding cases is that Alabama law has placed a protective shield over the constitutional offices of sheriffs and their deputies acting in the line of duty, limiting the exceptions to the otherwise airtight doctrine of sovereign immunity to those listed in Alexander and Karrick. The Purvis opinion explicitly relied upon the limited-exception principle to grant the defendants sovereign immunity. 689 So. 2d at 796. Cranman placed the final brick in this shield by explicitly preserving Purvis. 2000 WL 1728367 at *23 n. 2. Because this action involves none of the Alexander and Karrick exceptions to the defendants' sovereign immunity, the plaintiff's state law claims against the defendant deputies are barred.

This decision finds support in current Eleventh Circuit case law, most notably in Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996), in which the court construed Alabama law to grant the constitutional offices of sheriff and sheriff's deputy absolute sovereign immunity from actions seeking a remedy other than injunctive relief. It also comports with McMillian v. W.E. Johnson, 101 F.3d 1363, 1365 (11th Cir. 1996), decided shortly after Tinney, in which the court stated "the holding of the case is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." Although both cases precede Cranman and Purvis, they acknowledge the status of these constitutional offices under Alabama law. This court does not find that status to have changed.

## CONCLUSIONS OF COURT

For the reasons stated above, the state law claims against the defendants will be dismissed. See Tinney and McMillan, supra. The court will deny the defendants' motion to dismiss based on the federal claims in Counts I and V. It would appear to the court that the

9

claims in counts I and III, in effect, allege one federal claim. For the time being, the court will deny the motion as to both claims. The court will dismiss Count II– it is true that persons cannot just volunteer for anything, especially if it is illegal. If the defendants violated any constitutional right, it was a due process violation based upon an unlawful arrest. The complaint does not state a First Amendment violation– certainly not a clearly established one.

This ___ day of January, 2001,

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

10